**\* NOT FOR PUBLICATION \***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                              :

MERYL GOLDBERG,               :
                              :

          Plaintiff,         :
                              :

        v.                  :     Civ. Action No.: 13-06055 (FLW)
                              :           OPINION

CAROLYN C. COLVIN,        :
ACTING COMMISSIONER OF SOCIAL  :
SECURITY                  :
                              :

          Defendant.      :
_____:

**WOLFSON, United States District Judge**:

Meryl Goldberg ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act ("SSA"). Plaintiff contends that the record does not support the decision made by the Administrative Law Judge ("ALJ"). Specifically, Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating physicians and improperly evaluated Plaintiff's credibility. After reviewing the Administrative Record, this Court finds that the ALJ's decision was based on substantial evidence and accordingly affirms the decision.

### I.      Factual Background and Procedural History

Plaintiff was born on April 18, 1969, and she was 42 years old on the alleged disability onset date of June 2010. Administrative Record 17, 20, 29 (hereinafter "A.R."). She has at least a high school education and is able to communicate English. A.R. 20, 29. Prior to her disability date, Plaintiff worked at various child care facilities, where she claims she was constantly on her feet.

A.R 163. Plaintiff most recently worked at Kiddie Academy as a food preparer and teaching assistant for six years, from 2003-2010. A.R. 30–31, 119. Her job tasks included preparing and ordering the food, putting away deliveries, feeding the children, and serving as a teaching assistant. A.R. 119. Before Kiddie Academy, Plaintiff worked at KinderCare Learning Centers from 1998–2003, where she worked with the three year-old children and later the infant children; she carried them, nurtured them, and changed their diapers. A.R. 30–31. Prior thereto, Plaintiff worked at the Princeton Healthcare System's childcare center, Small Wonders, from 1997–1998, where she also cared for children under the age of three by holding and changing the children. A.R. 29–30, 163. Before she began her work in childcare, Plaintiff worked as a licensed hair dresser until 1995. A.R. 29.

According to Plaintiff, she was unable to continue work beginning on June 7, 2010 due to issues with her ankle, which she had previously broken and on which she had surgery. A.R. 31. Plaintiff additionally complains of pain in her shoulder, A.R. 38, her back, A.R. 34-35, and of sleep apnea. A.R 40–41. She takes medication for her pain, high blood pressure, thyroid, cholesterol, and pressure in her foot. A.R. 39, 33. Additionally, she has been prescribed to use a cane and wear an ankle brace. A.R. 35–36.

Plaintiff applied for Social Security Disability Benefits ("SSDIB") on September 20, 2010, alleging disability beginning on June 7, 2010. A.R. 14. The application was initially denied on December 9, 2010; reconsideration of the application was denied on March 5, 2011. *Id.* Plaintiff requested a hearing by an ALJ on April 21, 2011. *Id.* Plaintiff, who was represented by John Forte, appeared and testified before ALJ Dennis O'Leary on April 11, 2012. *Id.* On May 17, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. A.R. 21. Plaintiff requested review on June 26, 2012 by the Appeals Council. A.R. 8. However, the Appeals

Council denied Plaintiff's requested review on August 27, 2013. A.R. 6. On October 10, 2013, Plaintiff filed this appeal against Acting Commissioner of Social Security.

a. *Review of the Medical Evidence*

**1. John Smith, D.P.M. – Treating Podiatrist**

From 1999 to 2011, Plaintiff visited Princeton Orthopaedic Associates, where she was primarily treated by Doctor John Smith, a podiatrist ("Dr. Smith"). Plaintiff had sustained multiple ankle sprains on her lateral right ankle and, in January 2006, underwent ankle surgery performed by Dr. Smith, which was apparently successful. A.R. 205–209.

However, in January 2010, she met with Dr. Smith again, complaining of pain in her right ankle and heel and stating that she had resorted to wearing the Bledsoe brace that she had from a prior surgery.[1] A.R. 202. On or about June 23, 2010, Dr. Smith performed right subtalar joint arthrodesis, a form of surgery, on Plaintiff's heel, inserting two screws in the process. However, the fusion did not heel, *see* A.R. 266, and revision surgery was required in March 2011 to remove the hardware in the heel. A.R. 257–58.

Treatment notes from Dr. Smith indicate that on June 21, 2011, Plaintiff was healing well with minimal discomfort, ambulating with a boot that she used out of the house but which she did not need in her house. A.R. 253. Arthrodesis was in good position and no reports of pain were mentioned. *Id.* Treatment notes dated August 16, 2011 indicate that during the majority of time, Plaintiff was not wearing her boot, there was good range of motion, and there was also good consolidation of arthrodesis site. A.R. 252.

---

[1] It appears that Plaintiff fractured her right lateral malleolus and underwent surgery and casting in February 2007. A.R. 16, 288. Plaintiff does not attach any medical evidence pertaining to this 2007 injury; it is merely referenced by Dr. DeFeo, Plaintiff's consulting orthopedist, in his examination, as well as by the ALJ in his decision. A.R. 16, 288. It is possible that the 2007 surgery referenced by Dr. DeFeo and the ALJ is, in fact, the 2006 surgery performed by Dr. Smith; the ALJ and Dr. DeFeo make no mention of a 2006 surgery, and when Dr. DeFeo examined Plaintiff, he noted evidence of three procedures on Plaintiff's ankle, which would account for the 2006, 2010, and 2011 surgeries performed by Dr. Smith. A.R. 289.

On or about February 23, 2012, Dr. Smith completed a Lower Extremities Impairment Questionnaire issued by Plaintiff's counsel, in which he opined that Plaintiff's impairments would preclude Plaintiff from (1) standing or sitting for more than one hour of an eight-hour work day, (2) lifting or carrying more than 10 pounds, or (3) pushing or pulling. A.R. 284–86. Further, Dr. Smith stated that Plaintiff was incapable of tolerating even low work stress, that her symptoms would frequently interfere with attention and concentration, and that Plaintiff's impairments would likely last at least twelve months. *Id.*

### 2.  Jack Loarea, P.T. – Treating Physical Therapist

Plaintiff began physical therapy with Jake Loarea, P.T. ("Loarea") on September 1, 2010, three months after her first ankle fusion surgery. A.R. 177. At that time, Plaintiff described constant pain, rated between 8 and 9 on a 10 point scale. Plaintiff attended physical therapy approximately every few days through October 20, 2010. A.R. 173–76.

On October 21, 2010, Loarea completed a functional capacity assessment form at the request of the Social Security Administration. A.R. 182–87. Loarea reported that Plaintiff had limited dosiflexion to 5 degrees and plantar flexion was from 5 to 15 degrees. A.R. 182. Loarea opined that Plaintiff had no limitation in sitting, but she could not stand or walk for more than one hour a day. A.R. 183. Loarea further reported that Plaintiff could lift and carry no more than 5 pounds occasionally and also had limitations in pushing and/or pulling. Finally, Loarea noted that Plaintiff required a cane for walking more than five minutes for long walks and and on uneven terrain. A.R. 186–87.

### 3.  John DeFeo, M.D. – Examining Orthopedic Surgeon

Doctor John DeFeo, M.D. ("Dr. DeFeo") examined Plaintiff once, on April 12, 2012, an examination conducted in conjunction with Plaintiff's application for disability benefits. A.R.

288. Dr. DeFeo interviewed Plaintiff and reviewed several medical records provided to him, including those from Dr. Smith and Loarea. A.R. 290. Dr. DeFeo wrote down his impressions in a typed report and filled out a Multiple Impairment Questionnaire issued by Plaintiff's counsel. A.R. 288–299.

During the examination, in addition to her ankle complaints, which consisted of "constant pain which is sharp in nature and exacerbated by inclement weather," necessitating the use of an air cast for stability and a cane for ambulation, Plaintiff complained of left shoulder pain which radiates out to her left arm and hand. A.R. 289. The pain is apparently from a shoulder injury sustained in 1998, which she addressed surgically in 1999 with ligamental repair; further, Plaintiff walks with a cane she holds in her left hand, which puts further stress on her left shoulder joint.[2] A.R. 288–91.

Dr. DeFeo stated in his report that in his opinion, Plaintiff "has a multilevel functional compromise of the left shoulder and the right ankle." A.R. 290. As to Plaintiff's left shoulder, Dr. DeFeo states that "[t]he exam of the left shoulder is consistent with post traumatic arthrosis with hypertrophic synovium and d[i]minished range of motion" and that

> this joint also has evidence of an advanced arthrosis with marked limitation of motor and motor weaknesses. . . . Based on her examination of this joint there appears to be an impingement syndrome with possible rotator cuff tear, or, at the least, rotator cuff tendonosis. Considering the fact that [Plaintiff] is dominantly left handed it is reasonable to conclude that the noted functional deficit of the left upper extremity only compromises her ability to work on an 8 hour a day, 5 days a week basis.

A.R. 290–91. As to Plaintiff's right ankle, Dr. DeFeo opined that Plaintiff "remains symptomatic" and that "[h]er pain is chronic and involves swelling and instability resulting in occasional buckling." A.R. 290.

---

[2] Plaintiff is left-handed. A.R. 291.

Regarding Plaintiff's ability to work, Dr. DeFeo concluded that "were [Plaintiff] to attempt to return to an active workforce her restrictions would be so numerous as to preclude her ability to engage in any gainful employment. These limitations would include avoidance of standing or walking for any extended period of time, stairclimbing, working overhead and performing activities that require fine manual dexterity on a repetitive basis." A.R. 291.

In the Multiple Impairment Questionnaire, Dr. DeFeo rated Plaintiff's level of pain as a 10 out of 10 and her fatigue as 8 out of 10. A.R. 294. Dr. DeFeo concluded that Plaintiff had marked limitations in using her left arm for reaching and moderate limitations in using her left fingers/hands for fine manipulations. A.R. 296. Dr. DeFeo stated that in an eight-hour work day, Plaintiff could only sit for three hours a day and stand and/or walk for one hour a day. A.R. 294. Dr. DeFeo further stated that if she worked, Plaintiff would have to take unscheduled breaks at unpredictable intervals throughout the day, that she was likely to be absent from work more than three times a month. A.R. 297–98.

### 4.  Tricia Gilbert, M.D.

Finally, on December 20, 2010, Tricia Gilbert, M.D. ("Dr. Gilbert") evaluated Plaintiff's complaints of snoring and daytime somnolence at Robert Wood Johnson University Hospital through a sleep study. A.R. 306. Dr. Gilbert found "significant respiratory abnormalities during sleep in addition to loud snoring  . . . . primarily in the form of apneas and hypopneas which occurred in cyclical fashion." Dr. Gilbert concluded that the study "demonstrates the presence of sleep-disordered breathing in addition to snoring," which "induce[s] moderate hypoxemia and disruption of sleep." A.R. 308.

On December 30, 2010, Plaintiff met with Dr. Gilbert again for CPAP [continuous positive airway pressure] titration due to obstructive sleep apnea." A.R. 310. Dr. Gilbert found that

6

"[a]pplication of nasal CPAP at a level of 8 cm $H_2O$ abolished most of the sleep-related abnormality and a level of 9 cm $H_2O$ resulted in near normalization of breathing patterns during sleep." A.R. 311.

    *b.   Review of the Testimonial Record*

        **1.   Plaintiff's Testimony**

At the hearing before the ALJ, Plaintiff testified that she filed for SSDIB after she could not work due to her ankle pain beginning on June 7, 2010. A.R. 31. She explained that she had problems with her ankle which resulted in pain and the need for multiple surgeries. A.R. 31.

Plaintiff began her testimony with a summary of her responsibilities at her previous places of employment. First, Plaintiff explained she worked as a licensed hair dresser until 1995.[3] A.R. 29. Next, Plaintiff was employed by at Princeton Healthcare System's childcare center, where she worked as a teacher and carried and nurtured the children.[4] *Id.* at 29-30. Next, Plaintiff testified that she was employed by KinderCare learning center where she worked with three year old children and infants. *Id.* Her responsibilities at KinderCare included carrying and nurturing the children and changing their diapers.[5] A.R. 31. Most recently, Plaintiff testified she worked at Kiddie Academy, where she was employed as a teacher's assistant and worked in the kitchen, preparing and ordering the food. A.R. 30. Additionally, Plaintiff indicated in her testimony that she lifted the food deliveries and put away the items. *Id.* Plaintiff testified to having worked at Kiddie Care for six years. A.R. 31.

---

[3] Plaintiff states that she has a license from completing beauty school. A.R. 29.

[4] There is no testimony as to the length of time Plaintiff was employed by Princeton Healthcare Systems, but Plaintiff has previously recorded as having worked there for one year. A.R. 163.

[5] The testimonial record does not indicate how long Plaintiff was employed by KinderCare; however the documents Plaintiff prepared for her claim indicate she worked there for approximately six years as well. A.R. 119.

Following this recitation of work history, Plaintiff was questioned as to her ankle injury. A.R. 31. Plaintiff testified that she ceased working at Kiddie Care on June 7, 2010, because of her ankle and a previous surgery. *Id.* Specifically, Plaintiff testified that she fell and broke her ankle, did not realize right away that her ankle was broken, went to Dr. Smith when she began experiencing pain, and eventually underwent surgery. *Id.* Plaintiff stated that she has not returned to work since 2010 "because [she] had her second operation then." A.R. 31. Plaintiff explained that her second surgery placed two screws in her foot and "cleaned out everything and cleaned out the bone, took some bone away." A.R. 31. After this surgery, Plaintiff testified that she was put in a cast for six weeks, followed by a walking boot for three months. *Id.* Plaintiff was then questioned as to her third surgery, which occurred on March 31, 2011. Plaintiff explained that she needed this third surgery because she was having problems with the screws placed previously, and her bone did not fuse. A.R. 32. Plaintiff was prescribed the same cast and walking boot protocol. *Id.* Plaintiff described her pain following her third surgery as, "very strong, excruciating pain. It was like throbbing." *Id.* Plaintiff testified that this pain was "all the time," and that she was prescribed pain medicine by Dr. Smith to deal with this pain. A.R. 33.

To cope with this daily pain, Plaintiff testified that she elevates her feet, but "can't walk too much and can't sit too much." A.R. 33. Plaintiff explained that she can't sit for more than ten minutes and must get up for about ten minutes following sitting because of the pressure in her ankle. *Id.* Furthermore, Plaintiff testified that she has to get up when she is sleeping because it feels like her ankle falls asleep and gets pins and needles. A.R. 34.

Plaintiff explained her daily routine as laying and elevating her ankle with pillows, and taking pain medication occasionally. *Id.* Plaintiff stated that she could only walk around her living room, but that even this hurts her ankles and her shoulder. *Id.* Plaintiff explained that her

shoulder pain comes from the use of her cane which was prescribed in September along with her ankle brace following her walking boot. A.R. 35–36. Plaintiff testified that without the ankle brace she is in "really bad pain." A.R. 36.

Plaintiff testified that either her children, ages eleven and sixteen, or her husband prepare her breakfast and lunch[6] and that she only moves from her bed to her couch, where she reads or watches television. A.R. 36. Plaintiff stated that she cannot do laundry without assistance, nor can she shop for groceries by herself; when she does shop for groceries, her husband drives and accompanies her, and she uses the "handicap cart" because she cannot walk up and down the aisles. A.R. 36-37. Plaintiff testified that she has not driven since her third surgery, so she must be driven by someone to the doctor's office. A.R. 37. Plaintiff stated that her only problem with personal care is the occasional trouble in putting on socks. A.R. 38.

Plaintiff's treating doctors are Dr. Smith for her ankle and Dr. Zimmerman for her shoulder.[7] *Id.* Plaintiff explained that she "snapped" her shoulder eleven years ago and had to get it surgically repaired. *Id.* Plaintiff described her left shoulder pain as, "it's like the bones are clicking again and I get pins and needles and [my shoulder] feels very weak." *Id.* Plaintiff listed her various medications: pain medication, Lisinopril for high blood pressure, Levoxyl for thyroid, Simvastatin for cholesterol, and a daily aspirin. A.R. 39.

Plaintiff also testified as to her sleeping problems. Specifically she wakes up at night from pain in her ankle and shoulder. A.R. 39. Plaintiff stated that when she discussed this with her doctor, Dr. Smith said "it just takes time to heal, to slow heal it." A.R. 40. Plaintiff also

---

[6] Plaintiff states, "I wake up and my kids, you know, kind of get my breakfast ready . . . ." A.R. 36. However, the record is unclear about whether Plaintiff prepares her own breakfast or whether her children prepare it for her. The ALJ notes, and Plaintiff states in her Rule 9.1 case statement, that Plaintiff prepares her own breakfast.

[7] Plaintiff stated that Dr. Zimmerman was a "new doctor," A.R. 38, and the medical evidence in the record does not include any evidence from Dr. Zimmerman.

testified that Dr. Smith told her to wear her brace outside to alleviate the pressure, but to elevate and ice her ankle as much as possible at home. *Id.* Plaintiff described her daily ice procedure as ice and elevation three times a day for 20 minutes. *Id.* Plaintiff also testified to a second sleeping problem – sleep apnea. *Id.* Plaintiff explained that she saw a Dr. Harangozo for sleep apnea and was prescribed a CPAP machine, which she uses at night and when she naps. *Id.* at 41.

Plaintiff was then questioned by the ALJ, who asked Plaintiff as to the frequency of her visits to Dr. Smith, her ankle doctor. *Id.* at 42. Plaintiff testified that she sees him about every four weeks. A.R 42. The ALJ also asked who was with Plaintiff during the day. A.R. 43. Plaintiff responded that during the day, her children were in school and her husband was at work. The ALJ then concluded the hearing. *Id.*

   c.  *ALJ's Findings*

The ALJ began by finding that Plaintiff met the insured status requirements of the Social Security Act to remain insured through December 31, 2014. A.R. 16. Next, the ALJ applied the standard five-step process to determine if Plaintiff had satisfied her burden of establishing disability. A.R. 16. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 7, 2010, the alleged onset date. *Id.* Second, the ALJ found that Plaintiff had the following severe impairments: status-post/left ankle/heel fracture and status-post left shoulder arthroscopy. *Id.* The ALJ noted that while Plaintiff was diagnosed with sleep apnea, her treatment has "successfully allowed for sleeping without obstructive breathing," as "[t]his condition has been corrected with CPAP treatment and it has no more than a minimal effect on the claimant's ability to perform basic work activities." *Id.*

Third, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments under the Social Security Act ("SSA") that would qualify for disability benefits. *Id.*

Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work under the SSA. *Id.* at 17. Specifically, in addressing the residual functioning capacity of Plaintiff, the ALJ concluded that "the evidence does not establish a level of pain to preclude all work activity." In reaching that conclusion the ALJ noted that Dr. Smith's notes indicate Plaintiff was steadily improving and experienced only minimal swelling with intense physical therapy. A.R. 18.  Indeed, the ALJ stated that "there is no objective evidence showing that the claimant has had to continue treatment with Dr. Smith." *Id.*

While the 2012 assessments by Dr. Smith and Dr. DeFeo indicate Plaintiff has more severe limitations, the ALJ gave little weight to these questionnaires. These assessments indicate that Plaintiff is only able to sit from one to three hours in an eight hour work day, and walk only one hour in an eight hour workday. *Id.* at 19. Additionally, both doctors agree that Plaintiff can only carry up to ten pounds and that she would be absent from work more than three times a month. *Id.* Dr. Smith concluded that Plaintiff was incapable of even low stress. *Id.*

In analyzing the credibility of these assessments, the ALJ held gave "little weight" to Dr. Smith's assessment because "it is inconsistent with his objective findings in his treatment notes." *Id.* In turn, Dr. DeFeo's assessment received little weight because "it is based on essentially subjective findings" and, thus, "[t]he evidence is not compatible with the requirements specified in section 1.02B." *Id.*

Further, the ALJ discounted the credibility of Plaintiff's testimony, noting that Plaintiff's "statements concerning the intensity, persistence and limiting effect of [her] symptoms are not

credible to the extent they are inconsistent" with the ALJ's residual functional capacity assessment, because, according to the ALJ, Plaintiff's statements are not borne out by the objective evidence. A.R. 18.

Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work, as her previous responsibilities included prolonged walking and standing. *Id.* at 20. However, the ALJ determined that given Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." *Id*. Accordingly, the ALJ concluded that Plaintiff was not under a disability under the SSA from June 7, 2010 to May 12, 2012, the date of the decision. A.R. at 21.

## II.    Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*,

186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

### III.    Standard for Entitlement to Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* § 1382c (a)(3)(A)–(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." Id. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the

ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146–47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146–47 n. 5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the

14

claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141–42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146–47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

### IV.    Plaintiff's Claims on Appeal

Plaintiff argues that the ALJ erred at Step Four in in finding that Plaintiff retained the residual functional capacity to perform a full range of sedentary work by (1) improperly weighing the medical evidence and (2) improperly evaluating Plaintiff's credibility.

In making a residual functional capacity determination, the ALJ must consider all evidence before him. *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. *See Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d at 121; *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

In *Burnett*, the Third Circuit determined that the ALJ had not met his responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "In the

15

absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707. A claimant's allegations of pain and other subjective symptoms are to be considered, *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529), and, if they are consistent with objective medical evidence but the ALJ rejects such allegations, the ALJ must provide an explanation for doing so. *See Van Horn*, 717 F.2d at 873.

### a.   Failure to Properly Weigh the Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence in two ways. First, Plaintiff argues that the ALJ improperly gave "little weight" to Dr. Smith and Dr. DeFeo's opinions. Second, Plaintiff argues that the ALJ erred in completely disregarding Loarea's opinions.

As to Dr. Smith's opinions, the ALJ noted that Dr. Smith's treatment notes indicate that the March 2011 surgery was successful "and by June 2011 there was minimal discomfort disambulating and no reports of pain." A.R. 18. While Dr. Smith's questionnaire, completed in February 2012, indicated that Plaintiff would have significant difficulty returning to work, the ALJ explicitly gave the assessment "little weight, as it is inconsistent with objective findings in his treatment notes." A.R. 18. Further, the ALJ took issue with Dr. Smith's finding in his questionnaire that Plaintiff was "incapable of even 'low stress'"[8] in the workplace, as Dr. Smith had indicated elsewhere in the questionnaire that emotional factors did not contribute to the

---

[8] Question 25 of the questionnaire appears to ask about emotional, as opposed to physical, stress, by asking, "[t]o what degree can your patient tolerate work stress?" I come to this conclusion based on the surrounding questions in the questionnaire as well as the ALJ's interpretation of the question. Question 25 followed Question 23, asking "[d]o emotional factors contribute to the severity of your patient's symptoms and functional imitations?" and Question 24, asking "[i]s your patient a malinger?" A.R. 285.

severity of Plaintiff's symptoms and functional limitations. *See* A.R. 285. Finally, the ALJ noted that though Dr. Smith claimed that Plaintiff "cannot effectively sustain ambulation or complete an activity, [he] indicates that [Plaintiff] can prepare meals; and that she can bathe and dress." A.R. 19 (internal citation omitted).

The Court finds that though Dr. Smith was Plaintiff's treating podiatrist, the ALJ based his decision to reject Dr. Smith's findings in the questionnaire on substantial evidence. The ALJ clearly and plausibly explained why he decided to reject Dr. Smith's assessment as (1) inconsistent with his prior treatment notes, (2) contradictory to the objective medical evidence, and (3) partly outside the scope of his training and treatment of Plaintiff. While Plaintiff points to treatment notes in September 2011 noting, in Plaintiff's words that Plaintiff "was having increased problems with her shoe wear and was observed limping" and that her right foot was inflamed, Dr. Smith's treatment notes from September 2011 state that Plaintiff "has inappropriate shoe wear on" and that the inflammation was "probably related to overaggressive physical therapy," an easily-corrected problem. A.R. 251; *see Plummer*, 186 F.3d at 429 (explaining that ALJ may reject treating physician's opinion if contradictory medical evidence exists and ALJ explains reasons for so doing); *see also Stehman v. Comm'r of Soc. Sec.*, 216 Fed. App'x 249, 252 (3d Cir. 2007) ("We have recognized that an ALJ may afford more or less weight to an opinion based on . . .the extent of the supporting medical evidence." (citing *Plummer*, 186 F.3d at 429; *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985))); 20 C.F.R § 404.1527(c). Therefore, remand is not warranted to re-weigh Dr. Smith's medical opinions.

Regarding Dr. DeFeo's assessment, the ALJ found that

Dr. DeFeo, a one time examiner, at the request of counsel, completed a questionnaire on April 4, 2010, based on his examination on that day. He assessed that the claimant was limited to sitting up to 3 hours in an 8 hour workday; standing and walking up to 1 hour in an 8 hour workday; lifting and carrying up to 10 pounds, among other

limitations and that she would be absent from work greater than three times a month.
I give this assessment little weight because it is based on essentially subjective
findings.

A.R. 19. Further, the ALJ concluded that while Dr. DeFeo "assessed significant fine

manipulative limitations in the dominant left hand when the record is essentially devoid of such.

*Id.* As noted above, [Plaintiff] had left arm arthroscopic surgery in March 1998 and she has not

been under any regular care for this since March 1999. She was able to work without incident,"

until June 2010, for unrelated reasons. *Id.* Thus, the ALJ concluded, Dr. DeFeo's assessment is

"inconsistent with objective evidence. *Id.*

The ALJ's treatment of Dr. DeFeo's assessment is also based in substantial evidence. First,

the opinion of a physician who only examined the patient once is accorded less weight than that

of a treating physician. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) ("[A] court

considering a claim for disability benefits must give greater weight to the findings of a treating

physician than to the findings of a physician who has examined the claimant only once or not at

all."); *see also* 20 C.F.R § 404.1527(c). Second, as with the ALJ's treatment of Dr. Smith's

assessment, the ALJ explained his reasoning for rejecting Dr. DeFeo's assessment. Here, the

ALJ pointed to the verifiable lack of objective medical evidence in the record to support Dr.

DeFeo's conclusions about Plaintiff's shoulder and arm pain and to the fact that Dr. DeFeo's

conclusions about Plaintiff's sitting, standing, lifting, and carrying limitations appeared to be

essentially subjective, since Dr. DeFeo did not appear to run any of his own tests on Plaintiff.

A.R. 19.  "Thus, the ALJ fulfilled his obligation to provide not only 'an expression of the

evidence s/he considered which supports the result, but also some indication of the evidence

which was rejected.'" *Albury v. Comm'r of Soc. Sec.*, 116 Fed. App'x 328, 331 (3d Cir. 2004)

(quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). As such, remand is also unwarranted to reassess Dr. DeFeo's opinion.

Finally, Plaintiff takes issue with the ALJ's apparent failure to consider the residual functional capacity assessment completed by Loarea, Plaintiff's physical therapist. A physical therapist is not an "acceptable medical source" to "provide evidence to establish an impairment," as defined in 20 C.F.R. § 416.913(a) and 20 C.F.R. § 404.1513(a). Instead, a physical therapist's opinion is an "other source," which "may be used to show the severity of [a claimant's] symptoms and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d). Therefore, "[s]tatements from a physical therapist are entitled to consideration as additional evidence, but are not entitled to controlling weight." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 878 (3d Cir. 2005) (citing 20 C.F.R. § 404.1513(d)). A 2006 policy interpretation ruling from the Social Security Administration notes,

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies* (SSA 2006); *see also, e.g.*, *Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940 JBS, 2014 WL 252095, at *6 (D.N.J. Jan. 23, 2014).

Here, Loarea's assessment was completed in October 2010, three months after Plaintiffs' unsuccessful June 2010 surgery and six months prior to Plaintiff's apparently successful March

2011 surgery. A.R. 182. Loarea's assessment is inconsistent with Dr. Smith and Dr. DeFeo's opinions in that Loarea opined that Plaintiff had no limitations in sitting. A.R. 186. Loarea's opinion was generally consistent with the other two doctors in identifying limitations on standing, walking, pushing, pulling, lifting, and carrying. To the extent Plaintiff puts forth Loarea's opinion in support of her contention that the ALJ erred in finding that she had the residual capacity to perform a full range of sedentary work, any error in failing to explicitly discuss Loarea's assessment would be harmless. Loarea's October 2010 assessment does not detract from the ALJ's conclusion that Plaintiff's March 2011 ankle surgery was successful and that within a few months of the surgery, Plaintiff was able to ambulate without significant discomfort. *See, e.g.*, *Rosa v. Colvin,* 956 F.Supp.2d 617, 624–25 (E.D. Pa. 2013) ("Under the harmless error rule, an error only warrants remand if it prejudiced a party's 'substantial rights.'") (citing *Shinseki v. Sanders,* 556 U.S. 396, 407 (2009)).

### b. *Failure to Properly Evaluate Plaintiff's Credibility*

Next, Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints. The ALJ may make credibility determinations about a plaintiff's testimony, specifically with regard to pain and other subjective complaints. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (3d Cir. 2009) (citing *VanHorn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). However, rejection of subjective testimony must be based on substantial evidence in the record. *VanHorn*, 717 F.2d at 873–74. Furthermore, if the ALJ finds that Plaintiff's description of pain is not credible, the ALJ must make a negative credibility determination regarding the degree of subjective pain alleged. *Id.* at 873. In that respect, when reviewing a decision by an ALJ, this Court must defer to the ALJ's determinations on the credibility of the witnesses and on whether the claimant has satisfied the burden of proof. *See Horodenski v. Comm'r of Soc. Sec.*, 215 Fed.

Appx. 183, 188–89 (3d Cir. 2007); *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001) (noting that where the ALJ has articulated reasons supporting a credibility determination, that determination will be entitled to "great deference").

Here, the ALJ rejected Plaintiff's subjective testimony based on substantial evidence in the record and provided clear reasoning in so doing. First, the ALJ notes that "[i]n terms of [Plaintiff's] alleged right ankle/foot pain, it is reasonable to find that [Plaintiff] has discomfort or some degree of pain related to the prior procedures, but the evidence does not establish a level of pain to prelude all work activity," and points to Dr. Smith's treatment notes indicating a successful recovery from the March 2011 surgery. A.R. 18, 252–53. Next, the ALJ points out that Plaintiff's testimony that she needs to elevate her right ankle/foot is not documented in the record, because Dr. Smith never prescribed such treatment and his treatment notes do not indicate any significant swelling or effusion, which would require elevation. *Id.* Third, regarding Plaintiff's shoulder pain, the ALJ found inconsistencies between Plaintiff's subjective complaints—which first surfaced in the record during Dr. DeFeo's one-time examination of Plaintiff in 2012 at the behest of Plaintiff's counsel—and the objective evidence—which indicated that Plaintiff's 1998 arthroscopic shoulder surgery did not preclude Plaintiff from returning to work between 1998 and 2010 and that Plaintiff did not seek medical treatment for any such pain before 2012.[9] A.R. 18.

---

[9] Plaintiff further argues that the ALJ did not consider the fact that Plaintiff "has an honorable work history with steady earnings every year prior to her onset since 1985, when she turned 17 years old." Pl.'s Br. at 22; *See Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). The Court appreciates Plaintiff's long work history, and it is true that the ALJ did not explicitly take Plaintiff's work history into account. However, the subjective complaints voiced by the plaintiff in *Dobrowolsky* were also supported by the objective medical evidence; here, the Court has found that the ALJ's determination that Plaintiff's subjective complaints are inconsistent with the medical record was based in substantial evidence. *Stroman v. Barnhart*, No. CIV.A. 03-4045, 2004 WL 1813106, at *5 (E.D. Pa. July 27, 2004) ("The holding in *Dobrowolsky* does not

Therefore, the Court accords great deference to the ALJ's credibility determination of Plaintiff's subjective testimony and does not find remand to be warranted on this point. *See, e.g.*, *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. App'x 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make. In view of the evidence presented in the record and of the ALJ's 'opportunity to observe the demeanor and to determine the credibility of the claimant,' these findings are entitled to 'great weight' and should be upheld.") (internal citations and quotation marks omitted).

## V.     CONCLUSION

The ALJ's decision on Plaintiff's disability claim was based in substantial evidence and is therefore affirmed. An appropriate order shall follow.


Date: March 13, 2015


                                                    /s/ Freda L. Wolfson
                                                  United States District
                                                          Judge

---

require that an ALJ give credibility to a claimant with a long work history in spite of contradictory statements made by the claimant that call that credibility into question."). Therefore, remand is not warranted under *Dobrowolsky*. *Id.*